Of Counsel:
DAMON KEY LEONG KUPCHAK HASTERT
Attorneys at Law
A Law Corporation

GREGORY W. KUGLE  6502-0
gwk@hawaiilawyer.com
LOREN A. SEEHASE    10414-0
las@hawaiilawyer.com
1003 Bishop Street, Suite 1600
Honolulu, HI 96813
www.hawaiilawyer.com
Telephone:  (808) 531-8031
Facsimile:   (808) 533-2242

Attorneys for Plaintiff
MAKAI RANCH, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MAKAI RANCH, LLC, | CIVIL NO. _____ |
| | (DECLARATORY JUDGMENT, |
| Plaintiff, | OTHER NON-VEHICLE TORT) |
| vs. | **COMPLAINT; SUMMONS** |
| FIRST AMERICAN TITLE INSURANCE COMPANY; and DOE DEFENDANTS 1-10, | |
| Defendants. | |

402781

# COMPLAINT

Plaintiff MAKAI RANCH, LLC ("Plaintiff" or "Makai Ranch"), by and through its attorneys, Damon Key Leong Kupchak Hastert, for a complaint against the above-named Defendants alleges and avers as follows:

## NATURE OF ACTION AND JURISDICTION

1. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a)(1), on the basis of diversity of the parties citizenship and the amount in controversy exceeds $75,000. Plaintiff is, and was, at all relevant times a Nevada limited liability company. Defendant is, and was, at all relevant times a California corporation. The amount in controversy is the difference in appraisal valuations of at least $306,000.

2. This Court is the appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391(b)(2). The property at issue is located in this judicial district; the actions complained of took place in this judicial district; documents and records relevant to the allegations are maintained in this judicial district; and the Defendants are present in and regularly conduct business in this judicial district.

3. This case arises under the laws of the State of Hawai'i and Hawai'i Revised Statutes ("HRS") chapter 431.

4. The declaratory relief sought is authorized by 28 U.S.C.

Sections 2201, and further necessary or proper relief based on a declaratory judgment is authorized by § 2202 and Rule 57 of the Federal Rules of Civil Procedure.

## PARTIES

5. Plaintiff MAKAI RANCH, LLC ("Makai Ranch") is a limited liability company organized under the laws of the State of Nevada, and duly registered and licensed to do business in the State of Hawai'i.

6. Defendant FIRST AMERICAN TITLE INSURANCE COMPANY, ("Defendant" or "First American") is a California corporation incorporated under the laws of the State of California, with its principal place of business in California, and duly licensed to do business in the State of Hawai'i.

7. John Does 1-99, Jane Does 1-99, DOE Entities 1-20, and DOE Governmental Units 1-10 ("Doe Defendants") are sued herein under fictitious names for the reason that their true names, capacities and responsibilities are presently unknown to Plaintiffs despite diligent, good faith efforts to ascertain such identifying information, but on information and belief they are persons, entities, governmental agencies, and/or partnerships who are or were in some manner presently unknown to Plaintiffs engaged in the activities alleged herein; and/or are in some manner responsible for the injuries and damages to Plaintiff; and/or are persons who failed to fulfill a duty or obligation,

which action, conduct, error or omission was the proximate cause of injuries or damages to Plaintiff's members; and/or were in some manner related to the party or parties that engaged in the activities alleged herein. Plaintiff will seek leave to amend this Complaint when the true names and capacities of the Doe Defendants have been ascertained.

## INTRODUCTION

8. This action seeks the full and complete coverage on Makai Ranch's title insurance policy claim with First American for damages and diminution of value.

9. After Makai Ranch obtained a title insurance policy from First American, a neighboring property owner claimed to be the dominant estate of a roadway easement over Makai Ranch's Property in which Makai Ranch is the servient estate.

10. However, the roadway easement did not show as an encumbrance on the title report over one of the Kuleana lots that was insured by First American.

11. Makai Ranch made a claim with First American on March 2, 2014. After initially denying the claim completely, First American eventually tendered a loss in value of $144,000 on January 5, 2018, nearly four (4) years

later, but not without first demanding extensive documentation from Makai Ranch and deposing its authorized representative.

12. Despite being presented with an appraisal documenting the diminution in value of $450,000, First American denied any further payment without justification, and rejected Makai Ranch's request for reimbursement of its attorneys' fees and costs associated with pursuing First American's tender of the claim.

## FACTUAL BACKGROUND

13. On August 5, 2013, Makai Ranch obtained a title insurance policy from Title Guaranty of Hawaii, Inc., an underwritten title agent of First American Title Insurance Company. The policy, No. FHSO-00007786, provides for coverage of $2,657,000.00 on Tax Map Key ("TMK") Nos. (1) 5-6-003-:010. (1) 5-6-003:017, and (1) 5-6-003:032 ("Property") with Makai Ranch, LLC as the insured on the policy ("Policy"). Policy, Exhibit "1".

14. Under the "Covered Risks" section of the Policy it states, in relevant part, that First American, subject to exclusions, exceptions, and conditions it will insure

> …against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:
> 1. Title being vested other than as stated in Schedule A.
> 2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from

    (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, or impersonation;
…
The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

15. On January 15, 2014, an adjacent property owner, Turtle Bay Resort, LLC ("TBR"), wrote to Makai Ranch asserting that the Grant of Nonexclusive Easement recorded in the Bureau of Conveyances in Liber 22730 at Page 170, and in the Land Court as Document No. 1603996 ("Easement") encumbers TMK 5-6-3:017 (also known as "Exclusion 23").

16. The Easement, granted by a prior owner of the insured Property to the prior owner of TBR's property, consists of a strip of land fifty-six (56) feet wide immediately adjoining TBR's property.

17. The Policy did not list the Easement as an encumbrance to Item II, Schedule C of the Policy.

18. On March 2, 2014, Makai Ranch tendered its claim to First American based on the assertion of Turtle Bay Resort, LLC (TBR"), successor in interest to Kuilima Resort Company, of an easement over TMK (1) 5-6-003-017, a kuleana parcel also known as "Exclusion 23" ("Claim").

19. By letter dated March 31, 2014, First American erroneously denied the claim on the assumption that it related to Schedule B, Item I, Parcel Third, when in fact the claim was asserted over Schedule B, Item II.

20. On April 10, 2014, Makai Ranch wrote to First American requesting reconsideration of its denial.

21. On July 3, 2014, Makai Ranch wrote to First American requesting a status update on its investigation.

22. On September 17, 2014, Makai Ranch requesting a status update on its investigation.

23. First American wrote to Makai Ranch, requesting an extensive list of documents from Makai Ranch allegedly for the purpose of conducting its investigation, requesting documents regarding merger and acquisition records, purchase, title, escrow, preliminary title report, communications, project development plans, and proposed subdivision plans.

24. In response, Makai Ranch produced approximately 973 pages to First American.

25. Following this initial production, First American requested additional documentation from Makai Ranch.

26. Makai Ranch supplemented its production with additional documents.

27. On June 17, 2015, First American wrote to Makai Ranch requesting Makai Ranch to provide authorization allowing Turtle Bay Resort, LLC to provide a copy of the "Agreement Re Marconi Road," commonly referred to as the "Plan A Agreement." Inexplicably, First American still had not taken any steps to challenge TBR's assertion of the Easement over Exclusion 23.

28. On October 20, 2015, First American wrote to Makai Ranch requesting further information and documentation.

29. At all relevant times, First American was aware that (1) Makai Ranch was attempting to market its property, which had been subjected to a condominium property regime ("CPR"), including Exclusion 23 and (2) that the assertion of the Easement over Exclusion 23 greatly impacted the marketability and market value of Exclusion 23. This is because Exclusion 23 is a separate legal lot and, under state and county law, includes the right to construct a dwelling unit, but subject to the 56 foot easement, would be unbuildable.

30. On October 27, 2015, Makai Ranch sold its interest in CPR Unit 7, which includes Exclusion 23, for a significantly discounted price reflective of the diminution in value to Exclusion 23 by virtue of the encumbrance of the Easement.

31. First American wrote to Makai Ranch and informed Makai Ranch of its intention to examine under oath Makai Ranch's authorized representative and requested additional information, on February 8, 2016 and March 30, 2016.

32. On July 16, 2016, First American took the deposition of Makai Ranch's authorized representative.

33. Upon information and belief, the purpose of First American's investigation of the Claim was not to determine the merits or lack of merit of TBR's assertion of easement rights over Exclusion 23, but rather was a search for any plausible reason to deny the Claim.

34. Upon information and belief, First American never took any steps, as required and allowed under the policy, to clear the Title to Exclusion 23.

35. Having dragged out its investigation for nearly three years, on January 10, 2017, First American wrote to Makai Ranch requesting Makai Ranch's position on whether it would withdraw its Claim in light of the fact that Makai Ranch transferred Exclusion 23 to a third-party.

36. Makai Ranch wrote to First American confirming that it would not withdraw its Claim for compensable Policy loss estimated to be

between $600,000 and $900,000, based upon the reduced value of Excusion 23 in its encumbered versus unencumbered state.

37. Finally, three years after Makai Ranch's Claim was submitted to First American, on April 3, 2017, First American wrote to Makai Ranch to accept coverage of the Claim, subject to a reservation of rights, and to demand documentation and information to substantiate Makai Ranch's alleged actual loss.

38. On July 6, 2017, Makai Ranch wrote to First American and provided it with an additional 428 pages of documents in support of its Claim.

39. On July 28, 2017, First American informed Makai Ranch that it had retained James E. Hallstrom, Jr. ("Hallstrom") to perform an appraisal to measure the diminution in value of the Property as of January 15, 2014.

40. On October 6, 2017, TBR recorded a Notice of Abandonment of the Easement, recorded as Regular System Document No. A-64880692 and Land Court Document No. T-10140441. TBR did not record the Notice of Abandonment because of any effort of First American and in fact, upon information and belief, First American took no steps as required and permitted under the Policy to clear title to Exclusion 23.

41. On October 28, 2017, Hallstrom was provided access to the Property to conduct its appraisal.

42. On December 5, 2017, Makai Ranch wrote to First American requesting a determination on the Claim.

43. On December 18, 2017, Hallstrom produced his appraisal report ("Hallstrom Appraisal") showing a diminution in value of $144,000.

44. On January 5, 2018, First American tendered loss, subject to its reservation of rights under the Policy, in the amount of $144,000 based on the Hallstrom Appraisal, and provided Makai Ranch with the Hallstrom Appraisal.

45. On February 26, 2018, Makai Ranch wrote to First American requesting a tolling agreement in order to allow Makai Ranch an opportunity to assess the Hallstrom Appraisal and amount tendered.

46. On March 8, 2018, First American declined Makai Ranch's request for a tolling agreement.

47. On April 19, 2018, Robert C. Hastings, III produced his appraisal report ("Hastings Appraisal"), at Makai Ranch's request, that appraised the value of Exclusion 23 at $880,000 before imposition of the Easement, and $430,000 after imposition of the Easement, thereby yielding a diminution in value of $450,000.

48. On May 22, 2018, Makai Ranch wrote to First American and provided it with the Hastings Appraisal and requested the remaining uncompensated damages of $376,000 (Diminution in value, $450,000, plus

Attorneys' Fees and Costs, $30,000, plus Appraisal Fees, $10,000, minus First American advance of $(144,000) equals $376,000).

49. On June 20, 2018, First American wrote to Makai Ranch and confirmed receipt of Hastings's appraisal report, and denied Makai Ranch's claim for the difference in appraisal value ($306,000), for reimbursement of attorneys' fees and costs ($30,000), and appraisal fees ($10,000).

### COUNT I – DECLARATORY JUDGMENT

50. The foregoing allegations are incorporated here by reference.

51. With the exception of a partial payment for loss caused by the encumbrance of the Easement, First American erroneously denied coverage for the loss in property value due to the encumbrance of the Easement.

52. Plaintiffs are entitled to a declaratory judgment that its loss was caused by the encumbrance of the Easement and it is entitled to indemnity under the Policy. Plaintiffs are further entitled to an order that First American pay the full benefits under the Policy.

53. Should Makai Ranch establish entitlement to a declaratory judgment that it be indemnified and that First American pay benefits under the Policy, Makai Ranch is entitled to "further relief" under 28 U.S.C. § 2202, including damages to be proven at a hearing.

### COUNT II – BREACH OF THE IMPLIED
### COVENANT OF GOOD FAITH AND FAIR DEALING –
### MISHANDLING OF CLAIM

54. The foregoing allegations are incorporated herein by reference.

55. Implied in every insurance policy is a covenant of good faith and fair dealing.

56. "The implied covenant [of good faith and fair dealing] is breached, whether the carrier pays the claim or not, when its conduct damages the very protection or security which the insured sought to gain by buying insurance." *Best Place, Inc. Penn Am. Ins. Co.*, 82 Hawaii 120, 132, 920 P.2d 334, 346 (1996).

57. "[The] insurer owes a duty to its insured to investigate *all* of the possible bases of an insured's claim. The insurer's duty to give as much consideration to the insured's interests as it does to its own obligates it to investigate a claim thoroughly." *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1073-74 (Cal. Ct. App. 2007) (emphasis in original).

58. First American put its own interest above that of Makai Ranch by initially denying the claim without an investigation, and then after reconsideration, withholding coverage determination for nearly four (4) years while Makai Ranch was forced to bear the loss in property value.

59. "Where an insurer denies coverage but a *reasonable investigation* would have disclosed facts showing the claim was covered, the insurer's failure to investigate breaches its implied covenant." *Jordan*, 148 Cal. App. 4th at 1074.

60. First American failed to conduct a full, fair, thorough and timely investigation of Makai Ranch's Claim.

61. Makai Ranch submitted its Claim on March 2, 2014 and First American initially denied the Claim on March 31, 2014.

62. First American did not retain and have its own appraiser prepare an appraisal report until July 28, 2017, over three (3) years after Makai Ranch submitted its Claim on March 2, 2014.

63. First American spent nearly four (4) years "investigating" the Claim by demanding Makai Ranch provide all documents and information related to Makai Ranch's knowledge of the Easement prior to the Policy, rather than investigating whether or not an Easement actually encumbered the Property.

64. First American breached this covenant of good faith and fair dealing by, *inter alia*, initially, unreasonably rejecting the claim without an investigation, then, only after Makai Ranch insisted on reconsideration of the denial, unreasonably delaying the investigation of the Claim for nearly four (4)

years, and then unreasonably rejecting the majority of the claim for diminution in value and the incurred attorneys' fees and costs.

65. Plaintiffs are entitled to a declaratory judgment that First American has failed to comply with the implied covenant of good faith and fair dealing. Should Makai Ranch establish entitlement to a declaratory judgment that First American breached this covenant of good faith and fair dealing under the Policy, Makai Ranch is entitled to "further relief" under 28 U.S.C. § 2202, including damages to be proven at a hearing.

## COUNT III – BAD FAITH

66. The foregoing allegations are incorporated herein by reference.

67. A claim for bad faith requires that "the insured need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured. An unreasonable delay in payment of benefits will warrant recovery for compensatory damages under the *Gruenberg* test." *Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 133, 920 P.2d 334, 347 (1996).

68. "[V]iolations of the unfair settlement provision, [HRS] § 431:13-103(a), may be used as evidence to indicate bad faith in accordance with

the guidelines of *Best Place*." *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 27 F. Supp. 2d 1211, 1221 (D. Haw. 1998).

69. First American's violations of HRS § 431:13-103(a)(11) unfair claim settlement practices include, but are not limited to: (B) failure to respond with reasonable promptness to communications of no more than fifteen days, (C) failure to implement reasonable standards for the prompt investigation of claims, (D) refusing to pay a claim without conducting an investigation, (F) failing to offer payment within thirty days of affirmation of liability, (G) failing to provide reasonable written explanation for any delay on claims unresolved for thirty days, (H) not attempting in good faith to promptly settle the claim after liability was clear, (I) compelling insured to seek litigation to recover under the policy by offering substantially less, (O) failing to promptly settle claims, where liability has become reasonably clear, and (P) failing to promptly provide a reasonable explanation for the denial of the claim. *See* Haw. Rev. Stat. § 431:13-103(a)(11)(B), (C), (D), (F), (G), (H), (I), (O), and (P).

70. First American (1) failed to timely respond within fifteen days to all of Makai Ranch's communications; (2) failed to conduct a prompt investigation of the Claim; (3) initially refused to pay the Claim without any investigation on March 31, 2014; (4) failed to offer payment within thirty days after First American finally accepted coverage for the claim on April 3, 2017;

16

(5) failed to reasonably explain its basis for its continued delay; (6) failed to attempt a good faith settlement of the Claim when liability was clear from the beginning that the encumbrance of the Easement was not on the Policy; (7) forced Makai Ranch to file this suit by only remitting $144,000 of the $450,000 in lost value due under the Claim; (8) failed to promptly settle the Claim; and (9) failed to promptly provide a reasonable explanation for its denial of payment of the remaining $306,000 in lost value.

71. Therefore, Makai Ranch is entitled to a declaratory judgment that First American's conduct of unreasonably delaying acceptance of coverage for the Claim for three years after the Claim was submitted, unreasonably delaying the partial payment of benefits for four years after the Claim was submitted, and unreasonably denying payment for the full loss in property value and the resultant attorneys' fees and costs was in bad faith. Should Makai Ranch establish entitlement to a declaratory judgment that First American's handling of the claim was in bad faith, Makai Ranch is entitled to "further relief" under 28 U.S.C. § 2202, including damages to be proven at a hearing.

WHEREFORE, Plaintiff herein demands judgment against Defendant First American for:

      A.    Declaratory Judgment that Plaintiff is entitled to indemnity under the Policy and that First American is ordered to pay the full benefits under the Policy;

      B.    Declaratory Judgment that First American has breached the covenant of good faith and fair dealing;

      C.    Declaratory Judgment that First American acted in bad faith;

      D.    Further relief in the form of monetary damages pursuant to 28 U.S.C. § 2202;

      E.    An award of Plaintiff's costs, expenses, and reasonable attorneys' fees in this action; and

      F.    Such other and further relief as this Court deems just and proper.

DATED: Honolulu, Hawai'i, November 7, 2018

DAMON KEY LEONG KUPCHAK HASTERT


*/s/ Gregory W. Kugle*
GREGORY W. KUGLE
LOREN A. SEEHASE

Attorneys for Plaintiff
MAKAI RANCH, LLC